LORENZO PLIMPTON *vs.* ELIZA C. GOODELL & another.

Worcester. Oct. 6, 1886. — Jan. 10, 1887. DEVENS & W. ALLEN, JJ.,
absent.

If the levy of an execution upon land is void, the debtor is still indebted to his
creditor, although this indebtedness must be established in a particular manner;
and, if the debtor knows or is advised that the levy is void, he can actually
intend to defeat, delay, or defraud his creditor, in making a conveyance of the
land to a third person, although the judgment upon which the execution issued
remains satisfied of record.

At the hearing of a bill in equity by A. to set aside a conveyance of land by B. to
C. as fraudulent against creditors, there was evidence tending to show that A.
recovered judgment in an action against B., and levied the execution issuing on
the judgment upon land of B.; that the execution was returned satisfied; that
the levy was subsequently declared void; and that, while the question of the
validity of the levy was in controversy, B. conveyed the land to C., who was her
brother and lived with her, and the conveyance was made under the advice of
B.'s counsel. C. testified that he knew or supposed that A.'s levy was void;
that he knew or believed that, if the levy was set aside, A.'s judgment debt had
not been paid; and that C. took the deed for the purpose of preventing A. from
proceeding against the estate. It also appeared that, after C. had been advised
by B.'s counsel to take a deed of the land, B. and C. went to the office of the
counsel, and the deed was made, acknowledged, and subsequently recorded; that
the deed purported to convey a fee simple absolute in the land to C., reserving
an estate of homestead; that a bond was taken by B., reciting that " C. takes
said farm and agrees to try the title of the same," and was on condition that the
obligation should be void, if C. should reconvey the land to B. upon payment of
all sums due to him " for moneys loaned and services performed " in the present or
the future; that the existence of this bond was kept secret until it was produced
at the hearing; that this land was all the property which B. had; and that B.
was too ill to attend the hearing as a witness, and too ill to have her deposition
taken, and her counsel did not ask for a postponement on this ground, and had
not attempted to take her deposition before the hearing. *Held,* that there was
evidence for the jury that the conveyance was made by B. with intent to defeat,
delay, or defraud her creditors, and that C. participated in such fraudulent
intent.

BILL IN EQUITY, against Eliza C. Goodell and Daniel M.
Chamberlain, to set aside a deed of certain land in Southbridge,
dated January 5, 1881, given by Goodell to Chamberlain, as
fraudulent against creditors of Goodell, or upon a secret trust
for her benefit.

At the hearing in the Superior Court, before *Bacon,* J., the
following issue was framed for the jury: " Was the conveyance
made by Eliza C. Goodell to Daniel M. Chamberlain of the real

estate described in the plaintiff's bill made with intent to defeat, delay, or defraud her creditors, or on a secret trust for her, express or implied, and did Daniel M. Chamberlain participate in said fraudulent intent and purpose?"

After the evidence was all in, the plaintiff asked the judge to direct the jury, that, upon all the evidence, they should find the issue in the affirmative, on the ground that there was no evidence to sustain the contention of the defendants; and the defendants asked the judge to direct the jury, that, upon all the evidence, they should find the issue in the negative, on the ground that there was no evidence to sustain the contention of the plaintiff.

The judge granted the request of the defendants; directed the jury to find the issue in the negative; and reported the case for the determination of this court.

If this direction was wrong, the verdict was to be set aside, and a new trial granted, unless the court should determine that the plaintiff's motion ought to have been granted, in which case judgment was to be entered for the plaintiff. The nature of the evidence appears in the opinion.

*T. G. Kent*, (*A. J. Bartholomew* with him,) for the plaintiff.
*F. P. Goulding & J. M. Cochran*, for the defendants.

FIELD, J. The report finds that there was evidence tending to prove that the plaintiff, on February 21, 1879, recovered judgment in the Superior Court against the defendant Eliza C. Goodell, in an action upon a promissory note dated April 1, 1869; that execution issued on the judgment, which the plaintiff levied upon the equity of redemption of this defendant in the pasture lot; that the execution was returned satisfied; that this levy was declared void; that on March 30, 1883, the plaintiff brought a writ of *scire facias* in the Superior Court; and that, at December term, 1884, this levy was set aside, and execution was ordered to issue for the " amount of the original judgment, without interest or costs, but to be suspended during the pendency of this suit, or until further order." The levy of execution by Daniel M. Chamberlain, for the benefit of Andrew M. Chamberlain, upon this defendant's equity of redemption in the farm, and the sale of it to the plaintiff, were void, for the same reason that the plaintiff's levy and sale were void, namely,

because each sale was a sale on execution of the right to redeem a part only of the land included in an existing mortgage. See *Cochran* v. *Goodell*, 131 Mass. 464 ; *Chamberlain* v. *Perry*, 138 Mass. 546 ; Pub. Sts. *c.* 172, § 53 ; Gen. Sts. *c.* 103, § 22.

The deed which the plaintiff seeks to have declared void was given by said Goodell to Daniel M. Chamberlain, the other defendant, on January 5, 1881. At this time the plaintiff's levy had not been declared void by the court, but the question of its validity was in controversy. The record of his suit then showed that his judgment had been satisfied, and it may be that the plaintiff, while his judgment remained satisfied of record, could not have maintained any suit upon the judgment, and could not have attached the defendant's property in any proceeding upon the judgment, and that his only remedy was by *scire facias* under the statutes. *Dennis* v. *Arnold*, 12 Met. 449. *Perry* v. *Perry*, 2 Gray, 326.

But if the levy was actually void, the defendant was still indebted to the plaintiff, although this indebtedness must be established in a particular manner; and, if the defendant knew or was advised that the levy was void, she could actually intend to defeat, delay, or defraud the plaintiff in making a conveyance of her property, although his judgment remained satisfied of record. Besides, a conveyance made upon a secret trust, and with an actual fraudulent intent, may be avoided by subsequent creditors. *Parkman* v. *Welch*, 19 Pick. 231. *Wadsworth* v. *Williams*, 100 Mass. 126. *Day* v. *Cooley*, 118 Mass. 524. *Dodd* v. *Adams*, 125 Mass. 398. *Bristol County Savings Bank* v. *Keavy*, 128 Mass. 298.

One question of law raised by the report is whether there was evidence for the jury that the conveyance was made by the defendant Goodell " with intent to defeat, delay, or defraud her creditors, or on a secret trust for her, express or implied," and whether the defendant Chamberlain " participated in said fraudulent intent and purpose." The defendants were brother and sister, and were living together, the deed was given under the advice of her counsel, and there was clearly evidence on which the jury might find that both the defendants knew or believed, at the time the deed was executed, that the levies upon both the

farm and the pasture lot were void, and that the farm, if the title remained in Mrs. Goodell, was liable to be levied upon by the plaintiff, if he obtained a new execution on his judgment. The following questions and answers show Chamberlain's knowledge and intent at that time: " You knew, did n't you, or supposed that that levy [the plaintiff's levy] was not good for anything? You was told so?" Ans. "Yes." "You knew or believed, did n't you, if this levy was set aside, that the judgment debt of Plimpton and A. M. Chamberlain had not been paid?" Ans. "Yes." "It was for the purpose of preventing Plimpton, or it was for fear that Plimpton would take some proceedings against this estate that you took your deed, — that was one of the reasons? Answer that yes or no." Ans. "Yes." After Chamberlain had been advised by her counsel to take a deed of the farm, he and Mrs. Goodell went to the office of her attorney, and the deed was made, acknowledged, and subsequently recorded. It purports to convey a fee simple absolute in the farm to Chamberlain, reserving an estate of homestead. A bond was taken by Mrs. Goodell, which recites that " Chamberlain takes said farm and agrees to try the title of the same," and is on condition that the obligation shall be void if Chamberlain shall reconvey the farm to Mrs. Goodell upon payment of all sums due to him " for moneys loaned and services performed" in the present or the future. The existence of this bond was apparently kept secret until it was produced at the trial. There was evidence that this farm was all the property Mrs. Goodell had. The acts of the two defendants, with the facts which are directly shown to have been known to Chamberlain, and which the jury might, on the evidence, well find were known to Mrs. Goodell, as well as the form of the transaction, were evidence against both of an actual intent to defeat, delay, or defraud the creditors of Mrs. Goodell, of whom the plaintiff was believed to be the principal one, if not the only one, whose claim they intended should not be paid. Mrs. Goodell was not called as a witness, and was not present at the trial. There was evidence that, at the time of the trial, she was too ill to attend, and too ill to have her deposition taken. Her counsel did not ask for a postponement on this ground, nor had they attempted before the trial to take her deposition. The facts were suspicious, and called for

explanation on her part, and the absence of any explanation by her, by deposition or otherwise, was a circumstance to be considered in connection with the excuse of ill health which was given.

It is plain that the plaintiff's motion that the court direct the jury to find the issue in the affirmative ought not to have been granted. The burden was upon him, and there was no admission or concession by both defendants from which such a verdict must necessarily follow. The question was for the jury. The verdict must be set aside, and a *New trial ordered.*