CHARLES J. MARTELL *vs.* JOHN J. DOREY & others.

Suffolk.     December 1, 2, 1919. — February 25, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Equity Pleading and Practice,* Appeal, Amendment, Decree *nunc pro tunc.* *Superior Court. Evidence,* Presumptions and burden of proof, Of fraud. *Equity Jurisdiction,* To reach and apply property conveyed in fraud of creditors.

After an appeal from a final decree of the Superior Court in a suit in equity had been entered in this court, it was, on motion before argument, discharged and, in the Superior Court, a motion was allowed, as of a date preceding the entry of the final decree, amending the bill so that the findings of the trial judge and the final decree conformed to the allegations of the bill as amended in a particular which had been fully tried when the suit was heard upon the merits. *Held,* that the Superior Court had no power to allow such an amendment.

Upon the return to this court of the record in the suit above described with the action of the judge of the Superior Court and the amendment appended thereto, it was *held* that the case must be considered only upon the record as presented by the original appeal from the final decree.

When a suit in equity comes before this court upon an appeal from a final decree with a report of the evidence, the powers of this court for the accomplishment of justice are extensive and include power to order or to authorize amendments to pleadings. By RUGG, C. J.

An appeal from a final decree of the Superior Court in a suit in equity, where the evidence was in part oral and was taken and reported by a commissioner appointed under Equity Rule 35, brings both questions of fact and questions of law for revision to this court, who must examine the evidence and decide the

case according to their own judgment, giving due weight to findings of the trial judge, whose decision, based upon the hearing of oral testimony, will not be reversed unless plainly wrong.

At the hearing of a suit in equity to reach and apply in payment of a judgment debt securities of the judgment debtor alleged to have been placed by him, in fraud of his creditors, in the hands of a second defendant, both defendants testified orally. There was evidence tending to show that during a period of about four years seven different certificates for an aggregate of two hundred and seventy-five shares of the preferred stock of a certain corporation had been issued to the second defendant, that two hundred of these shares were transferred through several intermediaries to the judgment debtor, leaving seventy-five shares in the name of the second defendant; that during this time the judgment debtor was entangled in much litigation which ultimately might involve him in considerable financial liability, part of which concerned proceedings instituted by his wife, and that some securities, other than those above described, had been conveyed by the judgment debtor to the second defendant in alleged payment of a note which might have been found not to represent genuine indebtedness. The trial judge found that the seventy-five shares of preferred stock remaining in the name of the second defendant were the property of the judgment debtor and were issued to the second defendant under an agreement or understanding between him and the judgment debtor, with the purpose of concealing the true ownership through a secret trust and in fraud of creditors, and that the shares were held by the second defendant without consideration. Upon an appeal from a final decree for the plaintiff, the entire evidence being reported, it was *held,* that the judge's finding could not be said to be plainly wrong.

It is not necessary, in order to maintain a suit in equity to reach and apply, in payment of a debt owed to the plaintiff, property of the debtor conveyed by him in fraud of his creditors, that the plaintiff should have been a creditor at the time of the fraudulent conveyance.

Allegations in a bill in equity in the Superior Court to reach and apply, in payment of a judgment debt, property conveyed by the judgment debtor to others in fraud of his creditors, were that the judgment debtor owned two-hundred and eleven shares of stock in a certain corporation, "evidenced by certain certificates, among which are certificates numbered . . . [giving the numbers] . . . or by certificates which have been issued in the place of said certificates," which stock was bought in the name of a second defendant under an agreement in fraud of the debtor's creditors, that the second defendant "now holds a part of said stock under said agreement," and that other defendants severally held other parts "of said stock" under like agreements. At the trial, the second defendant was inquired of as to seventy-five shares of stock of the corporation in question, which were represented by certificates in his name but bearing numbers other than those stated in the bill and express notice was given that the plaintiff contended that those seventy-five shares belonged to the judgment debtor. No objection was made to the examination nor was any *suggestion made that the defendant during the trial had no sufficient opportunity to produce evidence to controvert the plaintiff's contention.* A decree was made, upon findings warranted by the evidence, that the seventy-five shares might be reached and applied to satisfy the judgment debt. Upon an appeal from the final decree, it was *held* that a motion should be allowed

in the Superior Court to amend the bill to include the particular certificates described in the final decree and that, upon such amendment being allowed, the decree should be affirmed.

BILL IN EQUITY, filed in the Superior Court on June 29, 1917, and afterwards amended, against John J. Dorey, Willard B. Bryne, Caroline E. Manton, Ida E. Small, the Exchange Trust Company, G. Wallace Tibbetts and the American Sugar Refining Company, to reach and apply in satisfaction of debts amounting to $4,242.40 and interest owed to the plaintiff by the defendant Dorey, property conveyed by him to and held by the defendants Bryne, Manton, Small, the Exchange Trust Company and Tibbetts in fraud of the creditors of Dorey.

The third paragraph of the bill read as follows:

"3. That the defendant John J. Dorey is the owner of two hundred and eleven shares of the stock of The American Sugar Refining Company, . . . which stock is evidenced by certain certificates, among which are certificates numbered 'K-5890, J-48522, J-48523 and E-3339,' or by certificates which have been issued in the place of said certificates, which stock was bought in the name of the defendant Willard B. Bryne under an agreement between said defendants entered into for the purpose of concealing the true ownership and in fraud of creditors, and the plaintiff is informed and believes, and therefore avers, that the said Willard B. Bryne now holds a part of said stock under said agreement."

Later paragraphs contained allegations that the defendants Manton and Small severally held parts "of said stock belonging to the defendant John J. Dorey under an agreement that she [he] shall so hold it in order to conceal its true ownership and in fraud of creditors;" that the Exchange Trust Company held certain shares of stock of the same corporation belonging to the defendant Dorey "under a secret trust," and that the defendant Tibbetts had standing in his name or in his possession or under his control certain stock of the same corporation, among other securities, belonging to the defendant Dorey "under a secret trust and which cannot be come at to be attached."

The bill was taken *pro confesso* as to the defendants Dorey, Manton, Small and the American Sugar Refining Company. The other defendants filed answers. The suit was heard upon its merits by *J. F. Brown,* J., a commissioner having been appointed

under Equity Rule 35 to take the evidence. Material evidence and facts found by the judge are described in the opinion.

A final decree was entered directing the defendant Dorey to pay to the plaintiff the amounts of the judgment debts, interest and costs, and that, upon his failing to do so, a special master should sell "at private sale or public auction the twenty-five shares of preferred stock of the American Sugar Refining Company evidenced by certificate J-24271, dated May 20, 1908, and the fifty shares of preferred stock of the American Sugar Refining Company evidenced by certificate J-28666, dated November 15, 1909," and pay from the proceeds of the sale the amount ordered to be paid to the plaintiff, and pay the balance, if any, to the defendant Bryne, the defendant Bryne being ordered to deliver the certificates to the special master, and the American Sugar Refining Company to make the necessary transfers. The defendant Bryne appealed.

After the entry of the appeal in the Supreme Judicial Court, but before it was argued, it was discharged on motion and in the Superior Court *J. F. Brown,* J., allowed, as of April 11, 1919, the day before the entry of the final decree, an amendment presented by the plaintiff amending the third paragraph of the bill so that it should read as follows:

"3. That the defendant John J. Dorey is the owner of shares of stock of the American Sugar Refining Company, a corporation duly organized according to law and having a usual place of business in Boston, which stock was bought in the name of the defendant Willard B. Bryne under an agreement between said defendants, entered into for the purpose of concealing the true ownership in fraud of creditors, and the plaintiff is informed and believes, and therefore avers, that the said Willard B. Bryne now holds a part of said stock under said agreement."

The defendant Bryne appealed from the decree allowing such amendment.

*C. G. Morse,* (*R. C. Van Amringe* with him,) for the defendant Bryne.

*C. J. Martell,* pro se.

RUGG, C. J. This is a suit in equity by a judgment creditor of John J. Dorey, who is the principal defendant. Various persons were named as defendants. The only one now sought to be

charged is Willard B. Bryne. The suit is brought to reach and apply, in payment of the plaintiff's debt, property of the defendant which cannot be attached or taken on execution in an action at law and which has been placed in the hands of Bryne in fraud of the creditors of Dorey. Final decree was entered in favor of the plaintiff. *Rioux* v. *Cronin,* 222 Mass. 131. The defendant Bryne appealed.

While the case was pending before the full court on appeal from a final decree, but before argument, the appeal was discharged on motion. Then an amendment to the bill was allowed by a judge of the Superior Court, permitting the plaintiff to allege that certain shares of stock not described in the original bill were in fact owned by Dorey and were held by Bryne in fraud of the rights of the plaintiff. The allowance of such an amendment was beyond the power of the Superior Court. A final decree in equity had been entered. Thereafter that court had no further power to deal with the case, except on review, save in exceptional instances of which this is not one. *Thompson* v. *Goulding,* 5 Allen, 81, 82. *White* v. *Gove,* 183 Mass. 333, 340. *Shannon* v. *Shepard Manuf. Co. Inc.* 230 Mass. 224, 229, and cases collected. The record fails to show that this was a proper case for the allowance of an amendment *nunc pro tunc. Perkins* v. *Perkins,* 225 Mass. 392. When a suit in equity comes before this court on appeal from final decree with report of evidence, the powers of this court, in order to accomplish justice, are extensive and include that to order or authorize amendments to pleadings. The whole case is before this court to be disposed of as it ought to have been disposed of by the judge who heard the case and entered the decree. If it appears on the record that the decree is broader than the allegations of the bill and yet that there has been a full and fair trial, appropriate amendments may be ordered made in order to comply with the rule that the decree must conform to and not be in excess of the pleadings. In *Old Corner Book Store* v. *Upham,* 194 Mass. 101, a final decree was entered in the court below, and the case came before us on appeal with a report of all the evidence. It there was said at page 106, "it is competent for this court in the exercise of its discretion to order all the necessary amendments to be made in the pleadings to meet the case made out on the evidence." For other cases which have come up on appeal from final decree and in

which amendments have been allowed or ordered by this court, see *Collins* v. *Snow*, 218 Mass. 542; *Hayes* v. *Penn Mutual Life Ins. Co.* 222 Mass. 382, 389; *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow*, 199 Mass. 488. For amendment in action at law on appeal from judgment, see *Noble* v. *Brooks*, 224 Mass. 288.

It follows that the case must be considered on the record presented by the original appeal from the final decree. The proceedings in the Superior Court after the discharge of the appeal, and before the re-entry of the case in this court, including the affidavits, must be disregarded as having been irregular and without jurisdiction.

The case was heard by a judge of the Superior Court on answers to interrogatories and oral testimony. The evidence is reported by a commissioner. The judge made a finding of facts. Such an appeal brings before this court for revision questions of fact as well as of law. It is our duty to examine the evidence and to decide the case according to our own judgment, giving due weight to the finding of the judge whose decision, based upon the hearing of oral testimony, will not be reversed unless plainly wrong. *Lindsey* v. *Bird*, 193 Mass. 200. *Jennings* v. *Demmon*, 194 Mass. 108.

The only finding of fact by the judge of the Superior Court now disputed is that "the defendant William B. Bryne holds in his possession and control and as record owner seventy-five shares of the preferred stock of the American Sugar Refining Company, evidenced by two certificates, one numbered J-24271, dated May 20, 1908, for twenty-five shares, and the second numbered J-28666, dated November 15, 1909, for fifty shares, which stock is the property of the defendant John J. Dorey, and was issued in the name of the defendant Willard B. Bryne under an agreement or understanding between the defendant John J. Dorey and the defendant Willard B. Bryne with the purpose of concealing the true ownership through a secret trust in fraud of creditors, and that said stock is held by said Bryne without consideration."

A careful examination of the evidence convinces us that these findings cannot be pronounced plainly wrong. This is one of the cases where much may have depended upon the appearance and

manner of giving of testimony by Bryne, a witness at the trial. There was no direct and categorical evidence to the effect that stocks and property of Dorey were placed in the hands of Bryne in fraud of creditors upon a secret trust. That is not necessary in order that a plaintiff make out his case and is not usually obtainable in cases of this sort. It is enough if the relations of the parties and their conduct toward property affords fair ground for inference of the fraudulent purpose and the secret trust, notwithstanding their positive denials of improper purpose. Here, as in other branches of the law, mere disbelief of testimony as to facts is not affirmative proof of contrary facts. *Wakefield* v. *American Surety Co.* 209 Mass. 173, 177. *Cruzan* v. *New York Central & Hudson River Railroad,* 227 Mass. 594, 597. There was evidence which, if believed, tended to show that at about the time when the stock in question came into the hands of Bryne, the defendant Dorey was entangled in a good deal of litigation which ultimately might involve him in considerable financial liability. Although a part of this concerned proceedings instituted by his wife, voluntary conveyances of property by the husband might have been found to be fraudulent under *Shepherd* v. *Shepherd,* 196 Mass. 179, notwithstanding *Willard* v. *Briggs,* 161 Mass. 58. There were also controversies with other parties pending or threatened. Both Bryne and Dorey admitted that seventy-five shares of common stock in the American Sugar Refining Company had been transferred from Dorey to Bryne in alleged payment of a note which might have been found not to represent genuine indebtedness. There were denials by both that there were any other transactions between the two respecting stock in that corporation. There was, however, evidence that within a period of about four years seven different certificates for an aggregate of two hundred seventy-five shares of the preferred stock of that company were issued to Bryne, of which two hundred shares may have been found to have been transferred through several intermediaries to Dorey. The inference that the remaining seventy-five shares still standing in the name and in the possession of Bryne, certificates for twenty-five shares of which had been issued on the same day as some of those transferred to Dorey, also belonged to Dorey, cannot be pronounced irrational or plainly wrong in view of these circumstances and other evi-

dence disclosed in the record, which need not be narrated in detail.

It does not appear that the plaintiff was a creditor of Dorey at the time of the transfer, which has been found to have been fraudulent. That circumstance, however, does not prevent him from maintaining this suit. Subsequent creditors may avoid a transfer of property with fraudulent purpose upon a secret trust. *Plimpton* v. *Goodell*, 143 Mass. 365, 367.

The question of the title to these seventy-five shares of preferred stock appears to have been seasonably brought to the attention of Bryne and fairly tried. The allegation of the bill was that Dorey was the owner of two hundred and eleven shares of the stock of the American Sugar Refining Company, "which stock is evidenced by certain certificates, among which" were designated by number several certificates but not including those representing the seventy-five shares found to belong to Dorey and to stand in the name of Bryne. This enumeration of certificates did not purport by its terms to be inclusive. It covered two hundred eleven shares, whatever may have been the numbers of the certificates. Questions were asked about all certificates by interrogatories to Bryne and to Dorey and were answered without objection. During the first day of the trial inquiry was made of Bryne while under examination concerning these particular seventy-five shares, and express notice given of the contention that they belonged to Dorey. No objection was made to the examination, no suggestion offered that the intervening night while the trial was in progress was not long enough to enable Bryne to produce his checks and stubs and other evidence that he was the real owner of these shares, and no motion was made for continuance or suspension of trial because of surprise on this point.

We are of opinion that a motion for amendment to the bill, so as to include these particular certificates aggregating seventy-five shares, should be allowed. Upon allowance of such amendment, the decree may be affirmed with costs.

*So ordered.*